McCRARY *v.* SCHENEBECK.

4-3993

Opinion delivered November 18, 1935.

*Trimble, Trimble & McCrary* and *Chas. A. Walls,* for appellants.

*Robert L. Rogers II* and *John R. Thompson,* for appellee.

McHANEY, J.   Prior to its insolvency and its being taken charge of for liquidation by the State Bank Commissioner on December 19, 1931, the Lonoke County Bank was the duly designated and qualified depository for the public funds of Lonoke County, with the appellants as sureties on its depository bond.   On November 30, 1934, the county court of said county made and entered an order compromising and settling with appellants their liability on said bond for 10 cents on the dollar.   There was an appeal from this order to the circuit court by a citizen and taxpayer.   On December 1, 1934, appellee, also a citizen and taxpayer, brought this action in the circuit court against the county treasurer and the bondsmen on her official bond, as set out in the first count of the complaint, and against the bondsmen for the depository, as set out in the second count, both seeking to recover the amount of public funds on deposit in the Lonoke County Bank when it closed.   The county treasurer and her bondsmen defended on the ground that act

No. 16 of the Acts of 1935 relieved them from liability. Appellants defended on the ground, among others, that they were relieved by the provisions of act No. 325 of the Acts of 1935. The trial court sustained the plea of the treasurer and her bondsmen and denied a recovery as to them. It overruled the plea of appellants and rendered judgment against them on count 2 of the complaint. From this judgment there is an appeal and a cross-appeal.

Disposing of the cross-appeal first, it is contended by the cross-appellant that said act 16 of 1935, p. 37, is unconstitutional and void, and that it does not relieve the treasurer of Lonoke County and her bondsmen from liability, and *Bauer* v. *No. Ark. Highway Imp. Dist. No. 1,* 168 Ark. 220, 270 S. W. 533, is cited to support the contention. But in that case the rule was again stated that the Legislature may enact valid legislation to relieve a public officer and his bondsmen from loss of public funds, where the loss is not occasioned by the officers' fault, for the reason that individual taxpayers have no vested interest in such funds, and there is no impairment of the obligation of contracts. It was there further held that the special act of 1923, relieving sureties on a bond indemnifying appellee district against loss of funds in a depository bank was invalid, as it impaired vested rights of taxpayers in said district. This court has frequently held such legislation as act 16 of 1935 valid. *Pearson* v. *State,* 56 Ark. 148, 19 S. W. 499; *Newton County* v. *Greene,* 104 Ark. 270, 149 S. W. 73; *State* v. *Davis,* 178 Ark. 153, 10 S. W. (2d) 513; *Huxtable* v. *State,* 181 Ark. 533, 26 S. W. (2d) 577. Since said act 16 of 1935 is valid legislation, and since it does relieve county treasurers and their bondsmen for loss of public funds occasioned by insolvency of any bank in which such funds were lawfully deposited, where such bondsmen are not paid sureties, it necessarily follows that cross-appellant cannot recover.

The direct appeal in this case has given us more concern. Appellants set up act 325 of the Acts of 1935, as relieving them from liability. If it does, and we now so hold, it becomes unnecessary to discuss other questions argued in the briefs of counsel on both sides. Said act

is entitled "An act to relieve county officials and their bondsmen from liability for funds lost in closed banks." Section 1 thereof is as follows: "In all cases where any funds in the hands of any county officials of this State have been lost or become unavailable by reason of the insolvency of any bank in which the same were deposited, and not through defalcation of such county official, such county officials and their bondsmen, and the bondsmen for any county depository, in cases where such bondsmen have not become sureties on account of the payment of a cash consideration and in such cases only, are hereby released and relieved from any and all liability for loss of such funds. And further where any such county official has advanced all or any part of any such funds out of his private resources for the purpose of relieving a temporary emergency such funds shall be repaid to him out of the funds to which said advances were made in order that the effects of this bill shall be fair and equitable, provided, this act shall apply only to such banks as were closed by proclamation of the President of the United States, and/or State Bank Commissioner of Arkansas."

This act became effective April 4, 1935. The proviso in said section causes all the difficulty in its construction, —"provided, this act shall apply only to such banks as were closed by proclamation of the President of the United States, and/or State Bank Commissioner of Arkansas." All the National and Federal Reserve banks were closed by proclamation of the President on March 6, 1933. The Lonoke County Bank, of which appellants were bondsmen, was closed by the Bank Commissioner on December 19, 1931, more than a year before the President's proclamation. Are the bondsmen for said depository bank relieved by the provisions of this act, or does the proviso above quoted exclude them as well as the bondsmen of all other depository State banks that were closed by the Bank Commissioner prior to March 6, 1933? The President's proclamation did not close any bank not a member of the Federal Reserve System. The Bank Commissioner's records, of which we take judicial notice, show that very few State banks were, at that time,

members of the Federal Reserve,—approximately seven per cent. If we hold that only the banks that were closed on March 6, 1933, are included in said act, it would appear to work a discrimination against those State banks and their bondsmen that were closed by the Bank Commissioner prior to said date without any valid reason therefor. We do not think the language of the proviso open to this construction, nor that the Legislature intended to make any discrimination, but intended to relieve all county officials and their bondsmen from liability for funds lost in banks closed by the President's proclamation, or closed by the Bank Commissioner, without reference to the time when they were closed by the latter. Under the contention made by appellee, a State bank closed by the Bank Commissioner one day before March 6, 1933, having county funds on deposit and a bond with non-paid sureties, would be compelled to make the deposit good, but such a bank with like conditions, on being closed the next day, is relieved. We do not think the Legislature intended such injustice, but that all should be treated alike. The intention was, and, as we think, plainly written in the act, that its provisions of grace should extend to banks closed by the President's proclamation and those closed by the Bank Commissioner, without regard to the time when closed by him. This construction of the act and determination of the legislative intent is further strengthened when we consider its course through both houses of the General Assembly, as reflected by the journals, of which we take judicial notice.

House Bill No. 72, the predecessor of this act, by McCall of Saline, was introduced on January 17, 1935, read twice and referred to the committee on judiciary. The bill was amended in the committee and returned with the recommendation that it do pass as amended. Later the amendments were adopted and the bill ordered engrossed. On February 14, it was amended as follows: ''Amend House Bill 72, by McCall of Saline; strike from said bill the following language: 'provided, this act shall not apply where any bank was not taken over by the Bank Department on or after March 1, 1933,' and insert the following: 'Provided, this act shall apply

only to such banks as were closed by proclamation of the President of the United States, and/or State Bank Commissioner of Arkansas on or after February 28, 1933'.'' Another amendment was later adopted, but it is not material to this inquiry. The bill was ordered engrossed, reported correctly engrossed, and on March 4 it was read the third time and failed to pass. This action was reconsidered and on March 7, the bill was read the third time and passed with the emergency clause attached. It was transmitted to the Senate on the same day, where it was read the first and second times, whereupon Senator Holloway offered the following amendment: ''Amend House Bill 72, by McCall of Saline, by striking the following words from the last line of § 1, to-wit: 'on and after February 28, 1933'.'' This amendment was adopted, and on March 11 the bill as amended was read the third time and passed by the Senate as amended. It was thereupon returned to the House, which body concurred in the Senate amendment, was ordered engrossed and was passed by the House as engrossed on March 13th. The force and effect of all this is that it reflects the legislative intent that the act should apply to all banks closed by the Bank Commissioner, whether before or after February 28, 1933. The amendment striking out the date, February 28, 1933, is very persuasive that the Legislature intended the act to apply to all banks closed by the Bank Commissioner without regard to the time when closed. Moreover, this amendment was offered by the Senator from Lonoke County, the county in which this bank was located, and we think it fair to presume that the intention of his amendment was to cover this identical situation.

This view of the matter makes it unnecessary to consider or discuss the other questions raised on the appeal and the cross-appeal. The act being valid and being applicable to the bondsmen of the county depository, the Lonoke County Bank, the trial court erred in overruling the plea of the act as a bar to the action.

The judgment based on count 2 of the complaint will be reversed, and the cause dismissed.

JOHNSON, C. J., (dissenting). I concur in the majority opinion that by act 16 of 1935 the treasurer of

Lonoke County and her bondsmen were relieved from all liability for all public funds on deposit in banks as found by the circuit court, but cannot agree that act 325 of 1935 relieves appellants from liability. As pointed out in the majority opinion, this act became effective April 4, 1935. By the proviso: "This act shall apply only to such banks as were closed by the proclamation of the President of the United States and/or State Bank Commissioner" was retroactive only to the date of the proclamation of the President of the United States or the State Bank Commissioner. The bank in which these public funds were on deposit became insolvent and was voluntarily placed in charge of the State Bank Commissioner for liquidation more than one year prior to March 6, 1933. It is universally held that courts take judicial notice of proclamations of the President of the United States and of State officials. *Booe v. Road Imp. Dist.*, 141 Ark. 140, 216 S. W. 500; *Arkansas-Ash Lumber Company v. Pride & Fairly,* 162 Ark. 235, 258 S. W. 335; 23 C. J., p. 101, § 1900. Therefore we take judicial notice that the President of the United States issued his proclamation on March 6, 1933, closing all National and Federal Reserve Banks in the United States and its provinces. This proclamation did not take into account the solvency or insolvency of any bank or banks—it was a blanket order and closed every National and Federal Reserve Bank situated in the United States and its provinces. Furthermore we take judicial notice that simultaneously with the President's proclamation the Arkansas State Bank Commissioner issued his proclamation closing all State banks situated in this State, and moreover the question of the solvency or insolvency of said banks was not considered in this blanket order. We also know and are required to take judicial knowledge thereof that the State Legislature had this information when act 325 of 1935 was introduced and enacted. We also know and the Legislature knew that but one blanket proclamation has ever been issued by the President of the United States or the State Bank Commissioner closing all banks. We also know and the Legislature knew that insolvent banks are not closed for liquidation by proclamation of

the President of the United States or the State Bank Commissioner.

We also know, unless we close our eyes to the facts, that no such proclamation has ever been issued by the President of the United States or the State Bank Commissioner save the one issued on March 6, 1933. It appears therefore that the Legislature could have had but one date in mind, namely, March 6, 1933, when it deliberately wrote the word, "Proclamation" into the priviso of act 325 of 1935.

The purpose of act 325 of 1935, if indeed its purpose is pertinent to this inquiry, was to relieve county officials and their bondsmen of liability caused by the closing of all banks whether solvent or insolvent, by the peremptory proclamation of the President of the United States and the State Bank Commissioner. Many banks which were closed by these peremptory proclamations although going concerns up to that time, were never able to comply with conditions prescribed by the Comptroller of Currency of the United States or the State Bank Commissioner, and were therefore prohibited from reopening for transacting a banking business. Examples need not be sought elsewhere than in Little Rock. To relieve county officials and their bondsmen of deposits in apparently solvent banks on the date of the peremptory orders of the President of the United States and the State Bank Commissioner or on March 6, 1933, and which were denied the privilege of reopening for business because of more stringent rules and conditions were the exclusive class of banks selected as exempt by the provision of this act. From the majority opinion it is uncertain whether they deliberately ignore the proviso in act 325 or so construe its language as to produce the same result, but either theory is equally fallacious. Apparently the majority opinion ignores the proviso and treat its effect as if it were stricken therefrom. They say that the act relieves "all county officials and their bondsmen from liability * * * without reference to the time when they were closed." This unwarranted departure, *ignotum per ignotius,* sets this court up as a legislative body, and cannot be justified under the Constitution of this State.

The proviso in the act emphatically says: "This act shall apply only, etc." The majority opinion says it shall apply to all banks, regardless. Since when until now has this court assumed the power and authority to ignore plain and simple language which appears in a legislative enactment and substitute therefor a construction wholly at war with the plain and unambiguous language employed in the act? No case is or can be cited from this court justifying such interpolation, and I dare say none can be found in the printed reports.

The majority further say that their conclusion is strengthened when it is considered that act 325 was amended on its passage by striking out the phrase "on and after February 28, 1933," and leaving the act to read as it became a law; they say that this is very persuasive that the Legislature intended to make the act applicable to all banks irrespective of the time they were closed. In my opinion this amendment shows no such intent. On the contrary, it demonstrates that this phrase was stricken out because leaving it in would create an irreconcilable conflict in the language employed in the proviso. The President's proclamation was issued March 6, 1933, and with the language left in the proviso "on and after February 28, 1933," created such conflict as to be irreconcilable. In other words the Legislature by its amendment sought to avoid the very inconsistent and irreconcilable conflict into which the majority has fallen. The proviso in act 325 should be construed as it reads, and, when this is done, only such county officials and their bondsmen who had funds on deposit in National, Federal Reserve and State banks on March 6, 1933, would be relieved because closed by the proclamation of the President of the United States and the State Bank Commissioner. If the majority opinion be a construction of the language employed in the proviso of act 325, it creates the anomalous situation that by judicial construction an act of the Legislature is made applicable and retroactive to all National and Federal Reserve banks as of March 6, 1933, but as to State banks is made applicable and retroactive to the first day of the year one. This judicial interpolation is arrived at from plain

and unambiguous language used in the proviso. If such unwarranted construction be not discriminatory, unconstitutional and void, an act could hardly be found that is. Just why should county officials and their bondsmen who had funds on deposit prior to March 6, 1933, in National and Federal Reserve banks be held liable but those who had funds in State banks be relieved of all liability? It occurs to me that such discrimination is not only abhorrent to common honesty and decency, but is prohibited by positive law. See article 2, § 18, Constitution of 1874; *Jonesboro, L. C. & E. Rd. Co.* v. *Adams,* 117 Ark. 54, 174 S. W. 527.

I am unwilling for this court to usurp the power vested in the State Legislature by the Constitution of this State, and this I conceive to be the direct effect of the majority opinion.

For the reason stated, I most respectfully register my dissent.

I am authorized to say that Mr. Justice BAKER concurs in the views here expressed.