QUATTLEBAUM *v*. PLANT, SHERIFF.

4-7261 4-7289 consolidated—181 S. W. 2d 13

Opinion delivered April 3, 1944.

88

*Culbert L. Pearce* and *Owens, Ehrman & McHaney,* for appellant.

᠂*Yingling & Yingling,* for appellee.

E. A. HENRY, Special Justice. On September 8, 1941, judgment was entered in the chancery court of White county in different amounts against appellants, Jim W. Quattlebaum, *et al.* On appeal this judgment was affirmed by this court. *Quattlebaum* v. *Busbea,* 204 Ark. 96, 162 S. W. 2d 44. The judgment defendants in that case were found to have diverted funds from the "transportation budget" and by rather devious methods, to have used those funds in finishing a gymnasium for the school, which gymnasium also contained two or three classrooms.

At the 1943 session of the Legislature, act 67 was enacted and approved February 18, 1943. That act is as follows:

"ACT 67.

"AN ACT to Relieve Officials and Employees of School Districts from Certain Technical Liability.

"*Be It Enacted by the General Assembly of the State of Arkansas:*

"SECTION 1. All directors, officials and employees of school districts who have drawn or caused to be drawn funds of their respective districts, which funds were expended for the actual benefit of said districts, in the construction of a building or buildings prior to January 1, 1943, and which are located on school property and used for school purposes, but which funds, through some error or misunderstanding of the law on the part of any such directors, officials or employees, were drawn from an improper account, or in an improper or unauthorized manner, are hereby relieved of any liability

on any claim, or judgment, for the benefit of any school district based on claim arising from any technical liability for the use of said school funds in such manner, and any such claim is hereby released, and any judgment based on any such claim heretofore rendered in favor of or for the use and benefit of any school district, against directors, officials and/or employees of any school district, in any court of this state, is hereby released, satisfied and cancelled.

"SECTION 2. Nothing in this act shall be so construed as to relieve from liability any school director or official or employee of any school district who has appropriated to his own use any funds of any school district for which said district does not obtain value in property or services, or who has knowingly caused to be paid to another any funds belonging to a school district for which said district did not receive value in property or services; nor shall anything in this act be construed to change the present law as to the duties and liabilities of county treasurers.

"SECTION 3. All laws and parts of laws in conflict herewith are hereby repealed, and this act shall be in force and effect from and after its passage.

"APPROVED: February 18, 1943."

The appellants in the present appeal on March 30, 1943, filed their complaint in the White chancery court to enjoin the sheriff of White county from levying an execution on the judgment and for a cancellation of the judgment, basing their action on the provisions of act 67. Discovering, however, that this complaint had been prematurely brought, the act not carrying the emergency clause, they filed, at a later date and after the act had become effective, a second complaint practically identical to that filed on March 30, 1943.

Motions were filed in each case by the defendants, appellees here, to consolidate each case with the original case of *Quattlebaum* v. *Busbea*. These motions were granted by the court and the consolidation ordered. Then the defendants, appellees here, filed demurrers in

each case, which were sustained by the court, and appeals taken to this court. The two cases were here consolidated for hearing.

At the outset it is urged by appellants that the trial court erred in consolidating the cases brought by the plaintiffs-appellants with the original Busbea-Quattlebaum case. We believe the contention is well founded and that the order of consolidation as made by the chancellor was erroneous, but that it was harmless error, inasmuch as the record in the original case of *Busbea* v. *Quattlebaum* could have properly been brought into the present case as evidence, if and when the case should proceed to a hearing on the merits.

Act 67 is a general act. It applies to and operates uniformly on all members of a class, namely, "directors, officials and employees of school districts," and the classification is germane to the purpose of the act and is "characterized by some substantial qualities or attributes which render such legislation necessary or appropriate for the individual members of the class." 25 R. C. L., p. 815, *et seq.; State, ex rel., Attorney General,* v. *Lee,* 193 Ark. 270, 99 S. W. 2d 835. The purpose of the act is not limited to relief from a "judgment" but extends to and includes "any claim" which might be urged against the members of the class for the benefit of which it was enacted.

Act 67 is to be distinguished and differentiated from act 279 of 1933, which act in *State, ex rel., Atty. Gen.,* v. *Lee, supra,* was held to be a special act, and therefore unconstitutional, in that act 279 of 1933 applied to one county collector only, against whom a suit was pending in a circuit court. Act 67 of 1943 releases and cancels not only any judgment in favor of a school district for funds "drawn from an improper account or an improper or unauthorized manner," but also relieves the named officials of "any liability on any *claim* or judgment," on account of any such improper or unauthorized withdrawal of funds.

Act 67, therefore, meets the tests of a general act, and by its terms creates a remedy in favor of the class

therein named. The appellants, under the allegations of their complaint, bring themselves within the provisions of the act and are entitled to a trial upon the merits. In this connection and for the guidance of the trial court, we hold that the judgment in the case of *Quattlebaum* v. *Busbea*, 204 Ark. 96, 162 S. W. 2d 44, is not *res judicata* of the issues in the case now before the court. To so hold would be to nullify Act 67 and make it of no effect.

The judgment for the defendants is reversed with instructions to the trial court to overrule the demurrers and proceed to a trial of the case upon its merits.

ROBINS, J., disqualified and not participating.

GRIFFIN SMITH, Chief Justice, dissenting. Two rules of construction are involved: First, the Constitution, or an amendment to it, must be given the interpretation intended by the people who adopted it if that intention is deducible from the language employed; second, a statute should be held valid if this end may be achieved without doing violence to its terminology. But, the Statute is subordinate to the Constitution. So, in the controversy resulting in the appeal we are asked to decide, authority for Act 67 must not be denied, expressly or impliedly, by Amendment No. 14.

In the Lee case Act 279 of 1933, by its terms, was intended to relieve bondsmen ". . . in all cases wherein any county collector was short in his settlements with either the State or the County and its subdivisions for taxes collected during the year 1931, . . . and where action thereon has been commenced . . . and where the collector then serving is now insolvent and where the jurat to said bond was not completed."

In holding the Act to be invalid, Mr. Justice MEHAFFY, speaking for a majority of the Court, said: "It will be observed that the Act undertakes to relieve those persons only who are collectors and sureties on collectors' bonds, and where a case has already been brought in the Circuit Court and is pending at the time of the passage of the Act, and also where the Collector is insolvent. . . . There is no evidence that any suit was

pending in the Circuit Court anywhere in the State of Arkansas except the suit in Bradley County. . . . The people, . . . by the adoption of Amendment No. 14, did alter, reform, and abolish the power of the Legislature to pass local or special Acts. This Act also violates Sec. 18 of Article 2 of the Constitution which reads as follows: 'The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens.' "

The opinion then says that the Act undertook to relieve the collector and sureties on his bond "if the suit was pending in the Circuit Court at the time it was passed. . . . We think it therefore clearly grants to citizens privileges and immunities which, upon the same terms, are withheld from other citizens."

Act 67 clearly has for its purpose relief of those held liable in *Quattlebaum* v. *Busbea*. In affirming judgments against those here involved we held that money of the school district had been "siphoned from the treasury by a process of deceit and concealment."

The suit at bar lays before us a transcript of transactions two-fold in signification: (a) Upon the one hand there is a record of illegal conduct by public officials—conduct in any event highly subversive. (b) The lawmaking body clearly was not seeking to relieve school directors generally; but, with knowledge of the construction heretofore given Amendment No. 14, a bill was written for the poorly concealed purpose of excusing the particular transgressors. To avoid the effect of previous court decisions, the legislation was phrased in such a way that it could apply to 9,089 directors in 2,537 school districts,[1] as to 9,084 of whom there is no tenable suggestion that the public fund had been tampered with. Indeed, presumption is to the contrary, and the imputed stigma found in the statute was obviously put there to immunize the remarkably few at the expense of the many

[1] Taken from current figures compiled by the State Department of Education.

—some of whom, it is gratuitiously assumed, may have gone astray.

Because words are adroitly used to disguise the ultimate purpose to relieve particular persons, we are asked to say that the Constitution has not been touched in what to me is plainly a bypassing statute. We are requested to hold that the Act does not disclose the indentures we of the minority still identify after the fine Italian hand came to legislative rest.

Act 68 of 1943 was the companion of 67. Each was approved February 18. The expressed purpose of 68 was "To relieve certain citizens of White County relative to a judgment rendered against them in the White Chancery Court." Here we have a *direct* approach; but, fearing frankness would be fatal, the so-called "general" Act was paired with the admitted special bill, to the end (as it was hoped) that the judicial department would accept one if it struck the other.

The legislation presents an illustration of how an objective may be reached by circuitous travel. Amendment No. 14 says that the point proposed is not to be attained by any known route. The General Assembly introduced a new, but winding, byway and has prevailed.

After the first few decisions construing Amendment No. 14, this Court undertook to follow opinions that, relatively speaking, were written at a time when consideration was contemporaneous with action of the people in adopting the Amendment. The evils it was intended to abate were fresh in mind, and value of the remedy was best appreciated. Lapse of time tends to dim the understanding of reasons for a popular expression, until eventually the issue assumes an academic characteristic more easily disposed of by reference to a formula.

Mr. Justice McFADDIN and Mr. Justice KNOX join in this dissent.